| | |
|---|---|
| **DISTRICT COURT OF THE VIRGIN ISLANDS** | |
| **DIVISION OF ST. CROIX** | |

**REINALDO BERRIOS,**

          **Petitioner,**

    **v.**

**UNITED STATES OF AMERICA,**

          **Respondent.**

—————————————————————

        **1:14-cv-00003**
        **1:04-cr-00105-1**

**TO: Reinaldo Berrios, *Pro Se*, No. 07400-094**
     **USP Lee**
     **U.S. Penitentiary**
     **P.O.Box 305**
     **Jonesville, VA 24263**
**Harry Cyril Wallace, Jr., Esq., SAUSA**

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the Court upon the Order (ECF No. 901) of Chief Judge

Wilma A. Lewis in Criminal No. 04-00105 referring Petitioner Reinaldo Berrios's *pro se*

Motion under 28 U.S.C. § 2255[1] to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody (ECF No. 776), the Government's Out-of-Time Motion for Enlargement of

Time to Respond to Defendant's § 2255 Petition (ECF No. 822), Petitioner's Motion for

Extension of Time to Reply to the Government's Response in Opposition to Petitioner's

Motion to Vacate . . . Section 2255 (ECF No. 825), and Petitioner's Motion for Appointment

of Counsel (ECF No. 847)  to the undersigned for a Report and Recommendation.

---

[1] Citations to the United States Code are to the electronic version that appears in Lexis.

In addition to their motions, the Government filed a response in opposition to Petitioner's § 2255 motion (ECF No. 823) and Petitioner filed a supplement to his § 2255 motion (ECF No. 846).

## I. RELEVANT BACKGROUND

On the evening of April 17, 2004, four men engaged in a series of crimes including carjacking, attempted robbery, and the murder of an off-duty Virgin Islands Police Officer.[2] On May 31, 2006, a grand jury returned a third superseding 11-count indictment against four defendants, including Reinaldo Berrios. (ECF No. 309). Trial commenced on January 10, 2007, and on February 6, 2007, the jury convicted all four defendants on all charges. (ECF No. 483). In addition to sentences on the other charges, Berrios was sentenced to two consecutive life sentences for the murder of Officer Cuthbert Chapman.[3]

Berrios and his co-defendants timely appealed. The Third Circuit Court of Appeals affirmed their convictions. *United States v. Berrios*, 676 F.3d 118 (3d Cir. 2012). The United States Supreme Court denied certiorari on January 22, 2013. Berrios then timely filed this Section 2255 motion, docketed on January 21, 2014. (ECF No. 776). In his motion, Berrios asserts fourteen grounds for post-conviction relief. His supplement asserts one claim based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). (ECF No. 846).

---

[2] A full recital of the offense conduct can be found at 1:04-cr-00105, ECF No. 823, pages 1-21 or in the Government's brief on direct appeal.

[3] Berrios received twenty years on Count 1, twenty years on Count 2, fifteen years on Count 3, seven years on Count 4, Life on Count 5, Life on Count 6, fifteen years on Count 7, fifteen years on Count 8, twenty-five years on Count 9, fifteen years on Count 10, and twenty-five years on Count 11. (ECF Nos. 572, 573).

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 3

## II. LEGAL STANDARD

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution" but not every asserted error of law can be raised in a § 2255 motion. *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (citing *Davis v. United States*, 417 U.S. 333, 343, 346 (1974)). The general rule is that a petitioner "has procedurally defaulted all claims that he neglected to raise on direct appeal." *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (citation omitted); *Massaro v. United States*, 538 U.S. 500, 504 (2003). Moreover, a § 2255 petition may not "be used to relitigate matters decided adversely on appeal." *Government of the Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985) (citation omitted).

However, a petitioner properly raises ineffective assistance of counsel arguments under § 2255 rather than on direct appeal. *See, e.g., Massaro*, 538 U.S. at 504 (explaining it is "preferable" that such claims be considered on collateral review where the record for such claims may be properly developed); *accord United States v. Garcia*, 516 F. App'x 149, 151 (3d Cir. 2013) ("It is well-settled that this Court ordinarily does not review claims of ineffective assistance of counsel on direct appeal.") (citing *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003)).

To succeed on an ineffective assistance of counsel claim a movant must show both that 1.) counsel's representation was deficient and that 2.) the deficient performance

"prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Regarding the "deficient" prong, a movant must demonstrate that counsel "made errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. As for the prejudice prong, a movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.[4]

The movant bears the burden of establishing his ineffective assistance of counsel claims by a preponderance of the evidence. *United States v. Serrano,* 798 F. Supp. 2d 634, 641 (E.D. Pa. 2011) (citing *Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980)). A movant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Judicial scrutiny of counsel's performance is highly deferential, and a petitioner must overcome a "strong presumption" that counsel's strategy and tactics "fall[ ] within the wide range of reasonable professional assistance." *Id*. at 689. In addition, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to

---

[4] A court has discretion to dispose of a claim at either prong; there is no required order to the inquiry. *Strickland,* 466 U.S. at 697 (explaining a court need not "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one").

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 5

constitute ineffective assistance under the Constitution." *Id*. at 691-92. Thus,

"[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S.

356, 371 (2010).

**III. DISCUSSION**

**1. "Trial and appellate counsel rendered ineffective assistance of counsel for failing to file an actual innocence claim on direct appeal, where alleged victim, Officer Chapman, admitted on his death bed that Mr. Hernandez was the cause of his injuries not petitioner, which violated his right to effective assistance of counsel as guaranteed by the Sixth Amendment." (ECF No. 777) at 2.**

Petitioner bases his actual innocence claim on an allegation that Officer Chapman

identified the man who shot him. Petitioner alleges that, while hospitalized, Officer

Chapman said that "that Mr. Hernandez was the cause of his injuries." (ECF No. 777) at 2.

Counsel sought to have this alleged out of court statement admitted. The Court denied the

motion. Trial Transcript Vol. 15 at 67, *United States v. Berrios*, No. 04-cr-00105 (D.V.I.  Jan.

31, 2007) (hereinafter Vol. Tr. Pg.).

Even if the court admitted a statement that identified an individual involved in the

robbery or that identified a specific person as the shooter, the jury received ample evidence

from which they could have found Petitioner guilty of murder. *Inter alia*, Petitioner's own

statements. (ECF No. 823) at 19-20 and *infra*. Also, the jury did not have to find that the

Petitioner shot Officer Chapman to find the Petitioner guilty of murder. Under count five,

14 V.I.C. § 922(a)(2), any of the defendants could be found guilty of first degree murder if

the jury found that "the defendant *or an accomplice of the Defendant* killed the victim

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 6

named in the Indictment." (16 Tr. 44) (emphasis added). The sentence for a conviction on

count five is life in prison without parole. 14 V.I.C. § 923(a).

For Petitioner to prevail on an ineffective assistance of counsel claim, he must show

both that counsel's performance fell below an objective standard of reasonableness, and

that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Counsel's

performance was reasonable when he moved to have Officer Chapman's out-of-court

statements admitted into evidence. A trial court's adverse ruling on a motion, without

more, is insufficient to prove ineffective assistance of counsel. Accordingly, counsel was not

ineffective for failing to file an actual innocence claim based on the alleged out-of-court

statement of Officer Chapman.

**2. "Trial and appellate counsel rendered ineffective assistance of counsel when trial counsel failed to investigate which hospital staff heard Officer Chapman's descriptions of the person who shot him when he spoke with Officer James Charles at the hospital, in violation of his right to counsel by the Sixth Amendment." (ECF No. 777) at 4.**

The Court ruled that the statements Officer Chapman made while hospitalized were

inadmissible. (15 Tr. 67). Therefore, it doesn't matter who heard it, Officer Chapman's

statement would not be submitted to the jury. Locating additional witnesses to an

inadmissible statement would have been futile. Accordingly, counsel was not ineffective for

failing to investigate which hospital staff heard Officer Chapman's description of the person

who shot him.

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 7

**3. "Trial counsel rendered ineffective assistance of counsel for failing to investigate whether Officer Chapman died from an infection or pneumonia due to [the] hospital and not due to intentional premeditated murder by petitioner in violation of the Sixth Amendment." (ECF No. 777) at 8.**

Petitioner's claim is tethered to a single line of testimony by the forensic pathologist who performed the autopsy: "when you have a rubber consistency on palpation, [of the lung] usually that is indicative of some kind of inflammatory process, pneumonia." From this line of text, Petitioner concludes that Officer Chapman's death was due to intervening negligence by the hospital. 5 Tr. 96. Read in its entirety, Dr. Cortes's testimony wholly contradicts Petitioner's assertion. 5 Tr. 85-100.

The question before the Court is whether counsel was ineffective for failing to further investigate the victim's cause of death. The Court concludes that counsel's decision to not further inquire into the victim's cause of death was reasonable. First, Petitioner presents no facts to support the proposition that another expert would have reached a conclusion that differed from Dr. Cortes, who testified that Officer Chapman died from gunshot wounds. Second, Berrios maintained his innocence.

Counsel's strategy was to show that his client was not involved in the crime spree that took place on April 17, 2004. Counsel pursued this defense by highlighting that the Government had no direct physical evidence against his client and by reiterating that there

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 8

were no witnesses who identified his client.[5] Further inquiry into Officer Chapman's cause

of death would not have contributed to the defense strategy and Petitioner was not

prejudiced by counsel's alleged failure to do the same. Hindsight is not a basis for an

ineffective assistance of counsel claim. That in retrospect Berrios thinks another strategy

might have been better than the one he chose, does not render his attorney ineffective.

**4. "Trial counsel rendered ineffective assistance of counsel for failing to challenge that the Hobbs Act and murder charges did not affect interstate commerce in order to be charged federally, since the conduct was local within the premise of the Virgin Islands." (ECF No. 777) at 10.**

Counts 1, 2, and 6 charged the defendants under 18 U.S.C. § 1951(a). Section 1951 is

commonly referred to as the Hobbs Act. The jury was informed that to convict a defendant

on counts 1, 2, or 6, the Government had to prove that "the natural consequences of the acts

alleged in the Indictment would be to delay, interrupt, or adversely affect 'interstate

commerce.'" (16 Tr. 31). The Court further instructed the jury that they could find that the

requisite impact upon commerce had been proven beyond a reasonable doubt if they found

> "that Wendy's Restaurant was engaged in retail fast food sales in interstate
> or foreign commerce and in an industry that affects interstate or foreign
> commerce, that is, that Wendy's Restaurant was formed for the purpose of

---

[5] For example, cross-examination of witness Rogers pointed out the disparity between how tall the witness said the defendant was and how tall the defendant actually was. (4 Tr. 45-48). Cross-examination of witness Hernandez attempted to elicit testimony that Hernandez had been a suspect, and further, that he had become a suspect because Officer Chapman identified him. (5 Tr. 21-55). In closing arguments counsel argued that the hair identified in a ski-mask was Caucasian hair, therefore, at least one of the defendants had to be innocent, because, obviously, none of these defendants could have worn that mask—"[a]nd before you can convict any of the Defendants, you have to be very, very sure that you've correctly chosen who the innocent man is. Based solely on that ski mask. And if you aren't sure, absolutely, beyond a reasonable doubt, that you've got the right innocent man, you've got to let them all go." 17 Tr. 96.

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 9

doing business within and outside of the Virgins Islands, and actually did business outside of the Virgin Islands."

16 Tr. 31-32.

In the Third Circuit, "if the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under [§ 1951]." *United States v. Haywood*, 363 F.3d 200, 209-10 (3d Cir. 2004) (citation omitted). *See also United States v. Fredericks*, 684 Fed. Appx. 149, 163 (3d Cir. 2017) ("We only require 'proof of a *de minimis* effect on interstate commerce' in order to support a conviction under the Hobbs Act. . . . Because [the business that was robbed] imported goods from outside the Virgin Islands, the interstate commerce requirement is satisfied.") (citations omitted).

At Defendant Berrios's trial, the jury heard testimony that ninety to one hundred percent of Wendy's supplies are purchased and shipped from a warehouse in Florida. The jury saw photographic evidence that some of the supplies were imported from Canada. The jury heard that the only time the St. Croix Wendy's sources "anything in the Virgin Islands is when [they] are desperate and [they're] out of something." (4 Tr. 74, 75, 77). Arguing that the defendants' conduct—attempting to rob Wendy's and shooting an off-duty police officer in the process—did not impact interstate commence would have been futile.

**5. "Trial and appellate counsel rendered ineffective assistance of counsel by failing to move for a mistrial due to police officers wearing bold-print t-shirts and a picture of deceased Officer Chapman, which resulted in an extra prejudicial effect on the jurors that denied petitioner a right to a fair trial as guaranteed by the Sixth Amendment." (ECF No. 777) at 12.**

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 10

Counsel for Defendant Rodriguez:

Mr. King: If I may, Your Honor, may we approach?
(At side bar, on the record.)

Mr. King: Your Honor, this case has now become a circus. *Earlier today I made a complaint to the prosecution, that the police officers had come in and on their shoulders they had badges with pictures of the deceased on it.*

Now they're coming in - - I didn't mind that they have on white shirts, and something identifying themselves as police officers. It gets to be too much when we have them in black shirts and large white letters with "POLICE" across their chest.

*I believe that this is highly prejudicial*, that it intimidates the jurors as to making findings based on something other than the evidence. *I believe that these police officers have to be removed from this courtroom.*

Mr. Wallace: Judge, I don't see this is any different from them wearing a uniform in court. They are police officers. But the defense pointed out to us about something they were wearing. We agreed with the defense, took the buttons, and told them not to wear them in the courtroom.

But right now, wearing police T-shirts and polo shirts, there are a couple. So I guess they're objecting to the T-shirts. I don't see it as any different wearing a police uniform.

Mr. King: Your Honor, if I may. The Government's evidence is - - the jury will consider the evidence based upon the Government's proof.

The cavalry, however, *the cheering section that they have become, have become loud to the point of ridiculous*. Not loud in the sense that they are making noise or anything like that. It is loud in the sense of the size of the lettering that's on the police uniform. It's loud in the sense of the background against the black, and the white. It is loud in the sense of the statements that are being made by the presence and the amount of, numbers of officers that are in this very room.

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 11

> *Your Honor, the jury, in my opinion, in my humble opinion, will be influenced unjustly* by the manner in which the officers' presence, the officers are making themselves known as being here.
>
> Mr. Wallace: There are six officers wearing T-shirts, three white polo shirts with a white emblem.
>
> The Court: A total of 27 in the courtroom.
>
> Mr. Wallace: Correct, Judge.
>
> The Court: *The objection is denied.*

7 Tr. 63-64 (emphases added).

Even though it was not Plaintiff's counsel who raised the objection, objection to the t-shirts was made. It would have been futile and counterproductive for Petitioner's attorney to attempt to raise the objection again after the Court ruled. Further, because the Court denied an oral objection to remove the t-shirt wearing officers from the courtroom, the likelihood of success on a motion for mistrial on the same issue is nil. Accordingly, counsel was not ineffective for failing to move for a mistrial based on the police officers' courtroom apparel.

**6. "Trial and appellate counsel rendered ineffective assistance of counsel by failing to call an expert witness in the field of human memory and perception, in violation of the Sixth Amendment." (ECF No. 777) at 15.**

Petitioner posits that an expert in memory and perception would have alerted the jury to the fact that the eyewitnesses were under stress and that because of the trauma they had experienced, their memories were faulty and therefore their testimony was likely inaccurate. However, rather than claim the witnesses had faulty memories, defense counsel

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 12

systematically pointed out that the person witnesses said they saw was not the defendant.

For example:

> The person the witness saw was tall; the defendant is short.

> The person the witness saw was dark-skinned; the defendant is light-skinned.

> The person the witness saw had long straight hair; the defendant has locks.

An expert testifying that witness memory and perception is typically tainted due to stress

and trauma would have run counter to the defense strategy.

For example, carjacking victim Lydia Caines testified that she recognized the vehicle

from which the carjacker alighted. She said she knew that car and that car belonged to

Defendant Berrios. Caines said that car had a hard top. Counsel asked, "the vehicle that, in

fact, belong[s] to Mr. Berrios is a soft top, isn't it?" Witness Caines answered, "Yes." (3 Tr.

108).

Wendy's employee Itisha Browne testified that the man who held her co-worker at

gunpoint had a dark complexion. (4 Tr. 114-126). Counsel pointed to his client and asked

witness Browne, "this gentleman right here doesn't have a dark Puerto Rican complexion,

does he?" Witness Browne responded, "No he does not." (4 Tr. 135).

Wendy's employee Iris Rogers testified that the man who held a gun to her head was

the same height she is. Counsel stood next to witness Rogers. The witness agreed that she

and counsel were of similar height. Counsel then stood by his client, and asked, "My client

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 13

Mr. Berrios is considerably shorter than I am; would you agree?" She answered, "Yes, I agree, he's shorter than you." (4 Tr. 48).

Attempted carjacking victim Shariska Peterson testified that the individual she thought was Defendant Berrios was tall, "probably five ten, around there." Counsel stood next to his client and, referencing his own height, asked, "Mr. Berrios isn't five nine and a half is he?" Witness Peterson answered, "No." (6 Tr. 161).

In each of these examples, the defense wanted the jury to believe that the witness's memory was accurate. The defense wanted the jury to conclude, for example: the witness said the robber was a dark-complexioned man, the defendant has light skin, therefore the defendant is not the robber. Calling an expert in human memory and perception would have contradicted defense counsel's strategy. Accordingly, counsel's performance was reasonable.

**7. "Trial and appellate counsel rendered ineffective assistance of counsel by failing to move to have the wire interception of the recording suppressed since jurisdiction does not hold up in a different jurisdiction, and all evidence related to the wire interception must be excluded from the case." (ECF No. 777) at 19.**

Counsel moved to suppress the evidence obtained from electronic surveillance on the ground that the application affidavit did not sufficiently establish probable cause. (ECF Nos. 377, 378, 384). A hearing was held. The motion was denied. (ECF Nos. 408, 427).

Advancing a new or different theory on a previously litigated claim is not a basis for review. *Commonwealth v. Slavik*, 449 Pa. 424, 297 A.2d 920 (1972) *accord Niemeyer v. Cameron*, 2012 U.S. Dist. LEXIS 30487 (W.D. Pa. Jan. 23, 2012). Consequently, this claim is

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 14

meritless. Even if the Court were to take a broader view, such as that taken by the Sixth

Circuit,[6] Petitioner's argument fails.

Petitioner reasons that because the crimes he was alleged to have committed in the

instant case occurred in the Virgin Islands, a judge in the District of Puerto Rico did not

have jurisdiction to issue the order authorizing the interception of his oral

communications. (ECF No. 777) at 19. He challenges the Government to "produce the

crimes he/Petitioner violated by law in that territory." *Id.* He states that trial counsel

should have moved to suppress the electronic surveillance on jurisdictional grounds

because "there was no jurisdictional premise for the District Court in Puerto Rico to issue a

wire interception at the Detention Center where no crime was being committed." *Id.* at 20.

The record shows that the District Court for Puerto Rico had jurisdiction to issue "an

order authorizing or approving the interception of a wire, oral, or electronic

communication." 28 U.S.C. § 2518(1). To wit: 1.) Defendants Berrios and Moore were

detained in Puerto Rico; 2.) the application for the warrant was supported by a sworn

affidavit that stated that inmates Berrios and Moore were meeting with inmate Rivera and

discussing narcotics and other illegal activities in "the fourth floor recreation yard of the

special housing unit" (discussing narcotics and other illegal activities were "the crimes

---

[6] When alleging that trial counsel was deficient for "failing to pursue a motion to suppress in a specific manner, it is the petitioner's burden to establish by clear and convincing evidence (1) the motion to suppress would have been granted and (2) that had trial counsel performed as suggested, there is a reasonable likelihood the result would have been different." *Clark v. Bell*, 2010 U.S. Dist. LEXIS 104271 at *65 (W.D. Tenn. Sept. 29, 2010) (quoting *Clark v. State*, No. W2007-01440-CCA-R3-PC, 2008 Tenn. Crim. App. LEXIS 516 (Crim. App. July 2, 2008)).

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 15

violated by law in that territory"); and 3.) the judge found probable cause to issue the

order. Mem. Op. (ECF No. 427) at 3.

Contrary to Petitioner's supposition, the alleged crimes that formed the basis for the

order authorizing the interception of his oral communications were occurring in Puerto

Rico; the order was not issued on the basis of the crimes charged in the Virgin Islands.

Petitioner has failed to present (nor does the record show) "clear and convincing evidence"

(n.5) that a motion challenging the order for electronic surveillance on jurisdictional

grounds would have been granted. Consequently, this claim is meritless.

**8 and 9. "Trial and appellate were ineffective for failure to move to strike and/or remove the juror that knew Officer Chapman's brother since the juror may have had reason to convict due to connection with brother and not have sat impartially, which violated petitioner's right to effective assistance of counsel under the Sixth Amendment." (ECF No. 777) at 21. "Trial counsel should have challenged the juror for cause in order to enable his client to receive a fair trial, and counsel's failure to do so deprived petitioner of his Sixth Amendment rights." (ECF No. 777) at 24.**

There is no evidence that the referenced juror knew Officer Chapman's brother.[7]

The Government raised the issue:

> Mr. Wallace: The other thing, Judge, it has come to our attention that Joseph Chapman, the brother of the deceased –
>
> The Court: Has been sitting in court?

---

[7] Petitioner asserts that the juror knew Officer Chapman's brother. The Court finds no evidence in the record to support his assertion. Voir dire questions included: "Are there any of you who attended the funeral of Mr. Chapman, the deceased and victim in this case?" "Are there any of you who are related to Mr. Chapman, the victim in this case, Cuthbert Chapman?" "Any of you were friends of Mr. Chapman?" Of those jurors that said they knew the victim, the Court asked, "How long have you known Mr. Chapman?" and "Do you believe you could be fair and impartial in this case?" Potential jurors who stated that they could not be impartial were excused. (1 Tr. 51-53).

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 16

Mr. Duross: He recognized one of the jurors, and says that he -- he deals with vending machines, wherever this person works, and recognizes that person, and thinks that that person may have recognized him.

The Court: Recognized?

Mr. Wallace: Mr. Chapman.

The Court: A juror recognized --

Mr. Wallace: He recognizes that the juror may have recognized him.

The Court: So what?

Mr. Wallace: He is related to. I just wanted to bring it to the Court's attention.

The Court: That one of the jurors might be related?

Mr. Wallace: Not related but just have recognized him. The work relationship.

The Court: Wait a minute. I'm trying to -- recognize who?

Mr. Wallace: Joseph Chapman, the brother of the decedent.

The Court: So what? Let me try to understand. Why is that significant?

Mr. Wallace: I guess if he knows him, and knows that he's a brother [of the decedent], he might be predisposed to lean toward the prosecution. Arguably, and I guess that's why –

Mr. Cole: An island this size, it would be impossible, I mean, --

The Court: That's what I was about to say. As a matter of fact, this Chapman –

Mr. Cole: I walk down the street any day, I'm sure I recognize half the people in the courtroom.

The Court: Chapman was in my ham radio class.

Mr. Wallace**:** I just wanted to bring it to your attention.

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 17

Mr. Cole: I appreciate the Government's concern.

6 Tr. 85-87.

"Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Here, the Government alerted the Court that Officer Chapman's brother said that he thought a juror might have recognized him. The record shows that the Court did not find that the possibility of a juror recognizing the decedent's brother signaled juror bias. Accordingly, counsel was not ineffective for failing to challenge the juror for cause nor for failing to move to strike the juror who might have known Officer Chapman's brother.[8]

**10. "Trial counsel rendered ineffective assistance of counsel for failure to move to dismiss Deputy Drake from testifying for violating the sequestration order in effect under Rule 615, which deprived the petitioner of his Sixth Amendment Rights." (ECF No. 777) at 26.**

Deputy Drake's testimony was limited to his opinion about Berrios's skin tone.

BY ATTORNEY WALLACE:

---

[8] Implied bias is "'bias attributable in law to the prospective juror regardless of actual partiality.' . . . This doctrine is rooted in the recognition that certain narrowly-drawn classes of jurors are highly unlikely, on average, to be able to render impartial jury service . . . ." *United States v. Mitchell*, 690 F.3d 137, 142 (3d Cir. 2012). The doctrine is limited and "reserved for exceptional circumstances." *Id.* at 147. "The categories of presumptive bias under the law are: kinship to a party, even if remote; any financial interest in the case; former jury service in the same cause, or because the prospective juror was connected to the same society or corporation as a party in the case." *United States v. Harper*, Criminal Action No. 2011-004, 2014 WL 3708071, at *9 (D.V.I. July 25, 2014), *aff'd sub nom. United States v. Flanders*, 635 F. App'x 74 (3d Cir. 2015) (citations omitted).

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 18

> Q. On May 10, 2004, did you get a chance to see Reinaldo Berrios up close?
>
> A. Yes I did.
>
> Q. Was his complexion darker than it is now?
>
> A. Yes it was.

14 Tr. 52. Counsel then cross-examined the witness.

To establish grounds for reversal, a petitioner must show that he was prejudiced by the failure to sequester. *Gov't of Virgin Islands v. Edinborough*, 625 F.2d 472 (3d Cir. 1980). Plaintiff presents no evidence nor does the Court find anything in the record that shows that Plaintiff was prejudiced by Deputy Drake's testimony. Accordingly, counsel was not ineffective for failing to move to dismiss Deputy Drake from testifying in violation of the sequestration order.

**11. "Trial and appellate counsel rendered ineffective assistance of counsel by failing to move to have all internal affairs reports of case agent Matthews and Deputy Drake in order to adequately cross-examine them at the trial, in violation of the Sixth Amendment to the United States constitution." (ECF No. 777) at 28.**

As discussed above, Deputy Drake's testimony was limited to his opinion regarding Defendant Berrios's skin tone. Nothing in the record indicates that this witness's veracity was at issue. Counsel challenged witness Drake's testimony in cross examination and during closing arguments, at which time he said, "[Berrios] is a light-skinned Puerto Rican. How important is that evidence? I'll tell you how important it is. It's so important that the Government did one of the silliest things I've ever seen in 28 years of practicing law. It put

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 19

a man on that stand and tried to testify that Mr. Berrios used to be a dark-skinned Puerto

Rican." (17 Tr. 75).

While testifying on January 25, 2007, Chenelle Simmonds accused Detective

Matthews of attempting to bribe her to give false testimony. (11 Tr. 85-87). Petitioner

contends that counsel should have obtained VIPD internal affairs reports for the purpose of

impeaching Detective Matthews's character.

As previously discussed, the defense strategy was to convince the jury that the four

defendants were not the robbers. Attacking the credibility of a detective does not align with

nor would it have advanced this strategy. Assuming arguendo that counsel would have

been able to obtain information that sullied Detective Matthews's character, Petitioner

must show that he was prejudiced by counsel's failure to do so.

The Government presented a circumstantial case that included the testimony of

forty witnesses. (17 Tr. 122). Eyewitnesses testified to the physical characteristics of the

defendants; expert witnesses testified about mobile phone records, fingerprints, textile

fibers, and the victim's cause of death; cooperating witnesses testified to incriminating

statements made by the defendants; friends and family members testified that contrary to

their assertions the defendants knew each other; and the jury heard audio and watched

videotape of Defendants Berrios and Moore discussing the robbery and the shooting of

Officer Chapman. Consequently, the Court finds no evidence in the record to support the

argument that but for counsel's failure to obtain the detective's internal affairs file (if one

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 20

existed), the outcome of the trial would have been different. Accordingly, Petitioner was

not prejudiced by counsel's performance.

**12. "Trial counsel was ineffective as counsel guaranteed by the Sixth Amendment when trial counsel failed to request an informant jury instruction." (ECF No. 777) at 32.**

Petitioner argues that the jury should have received an informant instruction rather

than or in addition to the cooperating witness instruction given by the Court. The jury was

charged as follows.

BY THE COURT:

The testimony of a cooperating witness, someone who provides evidence against someone else to escape punishment for his or her own misdeeds or crimes or for other personal reason or advantage, must be examined and weighed by the jury with *greater care* than the testimony of a witness who is not so motivated.

The jury must determine whether the testimony of a cooperating witness's testimony has been affected by self-interest, or by an agreement that he or she has with the Government, or his or her own interest in the outcome of the case, or by prejudice against any Defendant.

16 Tr. 19-20 (emphasis added).

Whether the term cooperating witness or informant was used, the jury would have

been instructed to exercise *great care* in weighing that witness's testimony as compared to

the testimony of a witness who is not motivated by self-interest or obligation to the

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 21

government.[9] The fact that witness Mohan received $12,000 from the Government was raised repeatedly throughout the trial. The jury was well aware that the witness received money from the Government. Whether he was technically classified as a paid informant or a cooperating witness did not influence the outcome of the trial. Consequently, counsel was not ineffective for failing to request an informant jury instruction.

**13. "Trial counsel rendered ineffective assistance of counsel by failing to move the court to charge the jury with the correct elements of 18 U.S.C. § 924(c)(1)(A) instead of an unclear theory jury charge as guaranteed by due process and fair trial right under the Fifth and Sixth Amendments." (ECF No. 777) at 33.**

Petitioner bases his arguments on *Alleyne v. United States*, 133 S. Ct. 2151 (2013). However, "*Alleyne* has not been made retroactively applicable to cases on collateral review," *Pavulak v. United States*, 248 F. Supp. 3d 546, 564 (D. Del. March 31, 2017) (citing *United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014)), and therefore "cannot be applied retroactively to cases on collateral review." *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir. 2014). Consequently, this claim is meritless.

**14. "Trial counsel rendered ineffective assistance of counsel at the sentencing hearing by failing to request the court to allow petitioner to speak at the sentencing, and deprived him of this Sixth Amendment right." (ECF No. 777) at 35.**

At his sentencing, the Court asked if Defendant Berrios would like to make a statement. Defendant declined. After declaring Defendant's sentence, the Court asked if

---

[9] *See* Model Criminal Jury Table of Contents and Instructions for the Third Circuit. Instruction 4.19 Cooperating Witnesses: ". . . you should consider the testimony of *(name of witness)* with great care and caution . . . ." Instruction 4.20 Informer: ". . . you should consider the testimony of *(name of witness)* with great care and caution . . . . ". http://www.ca3.uscourts.gov/model-criminal-jury-table-contents-and-instructions. Accessed Aug. 2, 2018.

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 22

Defendant had any questions. Defendant "[shook] his head left to right." Sentencing

Transcript at 5, 18 *United States v. Berrios*, No. 04-cr-00105 (D.V.I.  June 11, 2007).

Consequently, this claim is meritless.

**15. Supplement**

In his Supplement, Petitioner argues that the decision in *Johnson v. United States*,

135 S. Ct. 2551 (2015) compels the Court to vacate the sentences imposed for his

convictions under § 924(c), use of a firearm during a crime of violence. *Johnson* invalidated

the residual clause of the Armed Career Criminals Act (ACCA). This residual clause, which

defined "crime of violence," read: "or otherwise involves conduct that presents a serious

risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

In *United States v. Berrios*, the firearms counts were charged under 18 U.S.C. §

924(c)(1)(A)(ii) and 2. The definition of crime of violence under that section reads:

> (3)  For purposes of this subsection the term "crime of violence" means an
> offense that is a felony and--
>
> (A) has as an element the use, attempted use, or threatened use of physical
> force against the person or property of another, *or*
>
> (B) *that by its nature, involves a substantial risk* that physical force against the
> person or property of another may be used in the course of committing the
> offense.

18 U.S.C. § 924(c)(3)(A)(B) (emphasis added).

Petitioner moves the court to find that, like the ACCA residual clause invalidated by

*Johnson*, § 924(c)(3)(B) is unconstitutionally vague and, on that basis, to vacate his

convictions on Counts 4, 9, and 11, which charge that "the defendants did knowingly use, carry and brandish a firearm, during and in relation to a crime of violence . . . to wit: Carjacking . . . ." (ECF No. 309).

*United States v. Robinson*, 844 F.3d 137 (3d Cir. 2016), establishes that a Hobbs Act robbery conviction can serve as the predicate offense for purposes of § 924(c) convictions when a defendant is contemporaneously convicted of a firearm offense. By the same reasoning, a carjacking conviction can serve as the predicate offense for purposes of a § 924(c) conviction when a defendant is contemporaneously convicted of a firearm offense.

The Court's reasoning in *Robinson* is that the categorical approach[10] need not be applied when the facts underlying an instant offense "have either been found by [a] jury or admitted by the defendant in a plea." *United States v. Robinson*, 844 F.3d 137, 143 (3d Cir. 2016) ("analyzing a § 924(c) predicate offense in a vacuum is unwarranted when the convictions of contemporaneous offenses, read together, necessarily support the

---

[10] To determine whether a predicate offense, such as carjacking, is a crime of violence a court employs either the categorical approach or the modified categorical approach. The categorical approach focuses solely on whether the elements of the crime of conviction sufficiently match the elements of the generic, or commonly known, crime, while ignoring the particular facts of the case. *Mathis v. United States*, 136 S. Ct. 2243 (2016). The modified categorical approach is used when a statute provides for more than one way to commit an element of the crime. *Mathis*, 136 S. Ct. at 2249 ("enumerates various factual means of committing a single element"). This approach "allows courts to examine certain documents (such as charging papers and jury instructions) to determine under which set of alternative elements the defendant was convicted." *United States v. Mathis*, 786 F.3d 1068, 1072 (8th Cir. May 12, 2015) (citing *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013)). The statutory language in 18 U.S.C. § 2119, "by force and violence or by intimidation" has troubled courts in determining whether the carjacking statute is indivisible or divisible. In other words, is the statute composed of one way to commit the crime, "by force and violence or by intimidation" or, is the statute composed of two ways to commit the crime, carjacking "by force and violence" and carjacking "by intimidation"? However, regardless of which approach is used to analyze the statute, courts consistently find that carjacking is a crime of violence under the force clause of 924(c).

determination that the predicate offense was committed with the "use, attempted use, or threatened use of physical force against the person or property of another").

Here, Petitioner was contemporaneously convicted of carjacking and possessing a firearm during a crime of violence.[11] In other words, the facts underlying the carjacking and establishing the crime of violence were found by the jury and therefore, analysis under § 924(c) is not warranted. Consequently, this claim is meritless.

## 16. Motions for extension of time

Petitioner and the Government each moved the Court for additional time to file responsive pleadings. These motions were filed in the spring of 2015. The Government has since filed its response and Petitioner filed a supplement. Both documents were read, considered, and are referenced herein. Consequently, the Court recommends that the respective motions for extension of time (ECF Nos. 822, 825) be denied as moot.

## 17. Motion to appoint counsel

Petitioner moves the Court to appoint counsel for the purpose of pursuing his *Johnson* motion. As the Court finds that *Johnson* is inapplicable in this case, the Court recommends denying Petitioner's Motion for Appointment of Counsel (ECF No. 847).

---

[11] "Whoever, with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so . . . ." 18 U.S.C. § 2119.

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 25

## 18. Motion for leave to amend

Contemporaneous to his Supplement, Petitioner moves the court to grant him leave to amend his pleadings by adding the content of his Supplement. With due consideration for the policy favoring liberal allowance of amendments to pleadings, the Court finds that Plaintiff's motion to amend should be granted.

## IV. CONCLUSION

Based upon the foregoing, the Court **RECOMMENDS** the following:

1. Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (ECF No. 776) be **DENIED** without an evidentiary hearing;[12]

2. That a certificate of appealability be **GRANTED** as to Petitioner's claim pursuant to *Johnson* and that a certificate of appealability be **DENIED** as to all other claims;[13]

3. Petitioner's Motion for Extension of Time to Reply to the Government's Response in Opposition to Petitioner's Motion to Vacate . . . Section 2255 (ECF No. 825) be **DENIED** as moot;

4. Petitioner's Motion for Leave to Amend (ECF No. 846) be **GRANTED**;

---

[12] The question of whether to order an evidentiary hearing when considering a motion to vacate a sentence under § 2255 "is committed to the sound discretion of the district court." *Government of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989). A § 2255 evidentiary hearing "is unnecessary when the 'files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Padilla–Castro,* 426 F. App'x 60, 63 (3d Cir. 2011) (quoting 28 U.S.C. § 2255(b)). Here, the record in this case conclusively shows that Berrios is not entitled to relief. "

[13] When a district court issues a final order on a § 2255 motion, it must make a determination whether it will permit a certificate of appealability. 3d Cir. L.A.R. 22.2; Fed. R. App. P. 22(b)(1). A district court will issue a certificate of appealability only upon a finding of a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, the record fails to show a violation of Berrios's constitutional rights. Accordingly, a certificate of appealability should be denied.

*Berrios v. United States*
1:14-cv-00003; 1:04-cr-00105-1
Report and Recommendation
Page 26

5. Petitioner's Motion for Appointment of Counsel (ECF No. 847) be **DENIED**; and

6. The Government's Out-of-Time Motion for Enlargement of Time to Respond to Defendant's § 2255 Petition (ECF No. 822) be **DENIED** as moot.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

                                        ENTER:


Dated: August 13, 2018                  /s/ George W. Cannon, Jr.
                                        GEORGE W. CANNON, JR.
                                        MAGISTRATE JUDGE