## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **Criminal Action No. 2004-0105** |
| **v.** | ) | |
| | ) | |
| **REINALDO BERRIOS, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————————— | ) | |

**Harry Wallace, Esq.,**
Miami, FL
    *For the Government*

**Reinaldo Berrios**
    *Defendant Pro Se*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on Magistrate Judge George W. Cannon Jr.'s Report and Recommendation ("R&R") (Dkt. No. 903) regarding Defendant Reinaldo Berrios' ("Berrios") Motion to Vacate (Dot. Nos. 776, 777); the Government's Response to Berrios' Motion to Vacate (Dkt. No. 823); Berrios' Objections to Magistrate Judge Cannon's R&R (Dkt. No. 917); and Berrios' First through Fifth Motions to Supplement his Motion to Vacate (Dkt. Nos. 846, 961, 962, 964, 988). Berrios asserts fourteen grounds for relief in his Motion to Vacate (Dkt. No. 776), and four additional grounds in his Motions to Supplement (Dkt. Nos. 846, 961, 962, 964). The Court previously granted all five of Berrios' Motions to Supplement (Dkt. No. 999), and the Court here addresses the grounds for relief raised in both Berrios' initial Motion to Vacate and Motions to Supplement.

For the reasons that follow, the Court finds that two of Berrios' convictions—Counts 6 and 9—must be vacated and set for resentencing. Because the Court finds that Berrios' Motion to Vacate is otherwise without merit, the Court will deny the remainder of Berrios' Motion. The Court will also adopt Magistrate Judge Cannon's R&R as modified herein.

## I.   BACKGROUND

Following a four-week trial in early 2007, a jury found Reinaldo Berrios guilty of eleven counts stemming from a string of crimes he committed together with his three co-defendants in early 2004, including carjacking, attempted robbery, and murder.[1] The trial court sentenced Berrios to, *inter alia*, life imprisonment,[2] and Berrios and his co-defendants timely appealed on a variety of grounds. The Third Circuit affirmed Berrios' convictions and sentence. *United States v. Berrios*, 676 F. 3d 118, 144 (3d Cir. 2012).

After his direct appeal was denied, Berrios filed a petition for certiorari to the United States Supreme Court, which was denied. *Berrios v. United States*, 568 U.S. 1143 (2013). Thereafter, Berrios timely filed the instant Motion to Vacate under 28 U.S.C. § 2255 ("Section 2255"), in which he asserts fourteen grounds for post-conviction relief. (Dkt. Nos. 746). He also filed five Motions to Supplement his Motion to Vacate, in which he challenges a number of his convictions in light of the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015) (Dkt. No. 846 (First Motion to Supplement)); *Borden v. United States*, 141 S. Ct. 1817 (2021) (Dkt. Nos. 961, 964 (Second and Fourth Motions to Supplement)); *United States v. Taylor*, 142 S. Ct. 2015

---

[1] *See* Dkt. No. 309 (Third Superseding Indictment); Dkt. No. 485 (Verdict Form).

[2] *See* Dkt. Nos. 578, 579 (Judgment and Commitment Orders on Territorial and Federal Counts). While the Court subsequently acquitted Berrios' three codefendants on Counts 3 and 5 (*see* Dkt. No. 658), Berrios was not acquitted on those counts.

(2022) (Dkt. Nos. 961, 962, 964 (Second, Third, and Fourth Motions to Supplement)); and *Lora v. United States*, 143 S. Ct. 1713 (2023) (Dkt. No. 988 (Fifth Motion to Supplement)). The Court granted each of Berrios' five Motions to Supplement. (Dkt. No. 999).

The Court referred Berrios' Motion to Vacate to Magistrate Judge Cannon (Dkt. No. 901), who issued a R&R recommending that the Court deny the Motion based on his conclusion that the fourteen grounds specified therein, and the *Johnson* challenge specified in Berrios' First Motion to Supplement (Dkt. No. 846) are without merit. Berrios objected to Magistrate Judge Cannon's R&R (Dkt. No. 917).[3]

For the reasons explained below, the Court concludes that two of Berrios' convictions—Counts 6 and 9—must be vacated and set for resentencing, but that Berrios' Motion to Vacate is otherwise without merit.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.  Standard of Review

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) (similar). When reviewing a report and recommendation, a district judge must review *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C.

---

[3] *See* Dkt. No. 846 (First Motion to Supplement); Dkt. No. 961 (Second Motion to Supplement); Dkt. No. 962 (Third Motion to Supplement); Dkt. No. 964 (Fourth Motion to Supplement). Although Magistrate Judge Cannon's R&R addressed only the fifteen grounds for relief specified in Berrios' Motion to Vacate and First Motion to Supplement, the Court here addresses both those fifteen grounds for relief and the *Borden, Taylor*, and *Lora* challenges specified in Berrios' Second, Third, Fourth, and Fifth Motions to Supplement.

§ 636(b)(1) (similar). Where the parties do not timely object to a magistrate judge's R&R, there is no statutory requirement that a district court review the R&R before accepting it. *See Thomas v. Arn*, 474 U.S. 140, 151 (1985); 28 U.S.C. § 636(b)(1)(C) (a district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made"); *see also Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011) (recognizing that *Thomas* permits the district court to decline to review undisputed recommendations).

Notwithstanding *Thomas*, the Third Circuit has stressed that, even in the absence of an objection, the "better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report." *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987). When no objection to a magistrate judge's report and recommendation is made, the district court reviews the report and recommendation for plain error. *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987); *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006), *aff'd*, 276 Fed. App'x 125 (3d Cir. 2008) (explaining that by failing to object to a report and recommendation, the litigant "waived its right to have this Court conduct a *de novo* review," and that in those circumstances, "the scope of [the court's] review is far more limited and is conducted under the far more deferential standard of 'plain error.'"). Under this standard, a district court reviews a magistrate judge's report and recommendation for error that is "clear" or "obvious." *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007).

### B.  Motion to Vacate

Motions to vacate under Section 2255 are "the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 "afford[s]

federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974). To prevail on a Section 2255 motion, a petitioner must show that: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Provided the petitioner establishes as much, the court must vacate the judgment against petitioner, discharge or resentence the petitioner, or grant the petitioner a new trial, as appropriate. 28 U.S.C. § 2255(b). However, not every error of law may be raised in a Section 2255 motion. *Davis*, 417 U.S. at 346. Rather, the remedies afforded by Section 2255 are intended only where the "claimed error of law [constitutes] a 'fundamental defect which inherently results in a complete miscarriage of justice'" and "'presents exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.'" *Id.* (quoting *Hill v. United States*, 368 U.S. 428, 428 (1962)).

### III.    DISCUSSION

Berrios objects, in substance, to the entirety of Magistrate Judge Cannon's R&R. (Dkt. No. 917). The Court will therefore review Magistrate Judge Cannon's R&R *de novo*. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). Below, the Court begins by summarizing the fourteen grounds upon which Berrios seeks relief in his initial Motion to Vacate and the four grounds upon which he seeks relief in his five Motions to Supplement. (*See infra*, Section III.A). The Court then concludes that each of the fourteen grounds initially specified in Berrios's Motion to Vacate are without merit (*see infra*, Section III.B), but that the arguments raised in his Motions to Supplement warrant vacatur of Counts 6 and 9 in light of intervening changes in the law (*see infra*, Section

III.C).[4] Accordingly, the Court will vacate Counts 6 and 9, and will schedule a resentencing hearing on the nine remaining counts. (*See infra*, Section III.D). The Court will otherwise deny Berrios' Motion to Vacate.[5]

### A.   The Grounds Upon Which Berrios Seeks Relief

Berrios' Motion to Vacate initially specified fourteen grounds upon which he seeks post-conviction relief, all of which appear to be intended to attack all eleven of his convictions. (Dkt. No. 777 at 2-37). Because Berrios comes before the Court *pro se*, the Court construes these grounds liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As characterized by Berrios, the fourteen grounds initially asserted in his Motion to Vacate are:

**(1)**   "Trial and appellate counsel rendered ineffective assistance of counsel for failing to file an actual innocence claim on direct appeal, where alleged victim, Officer [Cuthbert] Chapman, admitted on his death bed that Mr. Hernandez was the cause of his injuries not petitioner, which violated his right to effective assistance of counsel as guaranteed by the Sixth Amendment." (Dkt. No. 777 at 2).

**(2)**   "Trial and appellate counsel rendered ineffective assistance of counsel when trial counsel failed to investigate which hospital staff heard Officer Chapman's descriptions of the person who shot him when he spoke with Officer James Charles at the hospital, in violation of his right to counsel [as guaranteed] by the Sixth Amendment." *Id.* at 4.

**(3)**   "Trial [and appellate] counsel rendered ineffective assistance of counsel for failing to investigate whether Officer Chapman died from an infection or pneumonia due to

---

[4] Berrios was charged in Count 6 with causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1). (Dkt. No. 573 at 1). He was charged in Count 9 with using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 2.

[5] Because Berrios' Motion to Vacate and the existing record make clear that Berrios is not entitled to any relief other than that which the Court grants here, the Court will rule on Berrios' Motion to Vacate without holding an evidentiary hearing. *See United States v. Delbridge*, 504 F. App'x 145, 148 (3d Cir. 2012) ("A court may dismiss a motion to vacate without . . . holding an evidentiary hearing when it is clear from both the motion and the record that the movant is not entitled to relief.").

[the] hospital and not due to intentional premeditated murder by petitioner in violation of the Sixth Amendment." *Id.* at 8.

**(4)**  "Trial counsel rendered ineffective assistance of counsel for failing to challenge that the Hobbs Act and murder charges did not affect interstate commerce in order to be charged federally, since the conduct was local within the premise of the Virgin Islands." *Id.* at 10.

**(5)**  "Trial and appellate counsel rendered ineffective assistance of counsel by failing to move for a mistrial due to police officers wearing bold-print t-shirts and a picture of deceased Officer Chapman, which resulted in an extra prejudicial effect on the jurors that denied petitioner a right to a fair trial as guaranteed by the Sixth Amendment." *Id.* at 12.

**(6)**  "Trial and appellate counsel rendered ineffective assistance of counsel by failing to call an expert witness in the field of human memory and perception, in violation of the Sixth Amendment." *Id.* at 15.

**(7)**  "Trial and appellate counsel rendered ineffective assistance of counsel by failing to move to have the wire interception of the recording suppressed since jurisdiction does not hold up in a different jurisdiction, and all evidence related to the wire interception must be excluded from the case." *Id.* at 19.

**(8)**  "Trial and appellate [counsel] were ineffective for failure to move to strike and/or remove the juror that knew Officer Chapman's brother since the juror may have had reason to convict due to connection with [Officer Chapman's] brother and not have sat impartially, which violated petitioner's right to effective assistance of counsel under the Sixth Amendment." *Id.* at 21.

**(9)**  "Trial counsel should have challenged the juror for cause in order to enable his client to receive a fair trial, and counsel's failure to do so deprived petitioner of his Sixth Amendment rights." *Id.* at 24.

**(10)**  "Trial counsel rendered ineffective assistance of counsel for failure to move to dismiss Deputy Drake from testifying for violating the sequestration order in effect under Rule 615, which deprived the petitioner of his Sixth Amendment Rights." *Id.* at 26.

**(11)**  "Trial and appellate counsel rendered ineffective assistance of counsel by failing to move to have all internal affairs reports of case agent Matthews and Deputy Drake in order to adequately cross-examine them at the trial, in violation of the Sixth Amendment to the United States Constitution." *Id.* at 28.

**(12)**  "Trial counsel was ineffective as counsel guaranteed by the Sixth Amendment when trial counsel failed to request an informant jury instruction." *Id.* at 32.

7

**(13)** "Trial counsel rendered ineffective assistance of counsel by failing to move the court to charge the jury with the correct elements of 18 U.S.C. § 924(c)(1)(A) instead of an unclear theory jury charge[.]" *Id.* at 33.

**(14)** "Trial counsel rendered ineffective assistance of counsel at the sentencing hearing by failing to request the court to allow petitioner to speak at the sentencing, and deprived him of this Sixth Amendment right." *Id.* at 35.

In addition to the fourteen grounds for relief initially specified in Berrios' Motion to Vacate, the Court will also address the four additional grounds for relief Berrios specifies in his Motions to Supplement. These four additional grounds are:

**(15)** Berrios argues that some of his convictions must be vacated in light of the Supreme Court's 2015 decision in *Johnson v. United States*, 576 U.S. 591 (2015). (Dkt. No. 846 (First Motion to Supplement)).

**(16)** Berrios argues that some of his convictions must be vacated in light of the Supreme Court's 2021 decision in *Borden v. United States*, 141 S. Ct. 1817 (2021). (Dkt. Nos. 961, 964 (Second and Fourth Motions to Supplement)).

**(17)** Berrios argues that some of his convictions must be vacated in light of the Supreme Court's 2022 decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022). (Dkt. Nos. 961, 962, 964 (Second, Third, and Fourth Motions to Supplement)).

**(18)** Berrios argues that some of his convictions must be vacated in light of the Supreme Court's 2023 decision in *Lora v. United States*, 143 S. Ct. 1713 (2023). (Dkt. No. 988 (Fifth Motion to Supplement)).

**B.  The Fourteen Grounds Initially Specified in Berrios' Motion to Vacate**

The Court begins with the fourteen grounds initially specified in Berrios' Motion to Vacate, finding that each of these fourteen challenges is without merit.

**1.  Grounds One and Two: Counsel's Alleged Failure to File an Actual Innocence Claim on Direct Appeal or Investigate Victim's Statements**

In his first and second grounds for relief, Berrios argues that his trial and appellate counsel were ineffective in "fail[ing] to investigate which hospital staff heard Officer Chapman's

8

descriptions of the person who shot him," and in "failing to file an actual innocence claim on direct appeal" based on those same statements. (Dkt. No. 777 at 2-4).

### a.   Applicable Legal Principles: Ineffective Assistance of Counsel

As a general matter, claims of ineffective assistance of counsel may be properly raised in a motion to vacate under Section 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Garcia*, 516 F. App'x 149, 151 (3d Cir. 2013). To prevail on an ineffective assistance claim, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington,* 466 U.S. 668, 690 (1984). More specifically, a petitioner must demonstrate, by a preponderance of the evidence, both: **(1)** that his counsel's representation was deficient (the "deficiency prong"); and **(2)** that his counsel's deficient performance "prejudiced" his defense (the "prejudice prong"). *Id.* at 687.

To satisfy the deficiency prong, a petitioner must show that his counsel "made errors so serious as to deprive the defendant of a fair trial[.]" *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *see also id.* at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). A court is not required to address the two prongs in order; rather, a court may dispose of an ineffective assistance claim on either prong. *See id.* at 697 (explaining that courts are not required to "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an

insufficient showing on one"). Judicial scrutiny of counsel's performance is highly deferential, and a petitioner must overcome a "strong presumption" that counsel's strategy and tactics "fall[] within the wide range of reasonable professional assistance." *Id.* at 689. Thus, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010).

The standard for ineffective assistance of appellate counsel is the same two-prong *Strickland* test as it is for trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). However, focusing on issues most likely to prevail "is the hallmark of effective appellate advocacy," *Smith v. Murray*, 477 U.S. 527, 536 (1986). Accordingly, to establish the deficiency prong with respect to appellate counsel, a petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," and that such issues were "clearly stronger" than those counsel chose to assert. *Smith*, 528 U.S. at 285; *see also Jones v. Barnes*, 463 U.S. 745, 752-54 (1983) (rejecting "*per se*" rule that appellate counsel must raise every nonfrivolous claim). Likewise, to establish the prejudice prong with respect to appellate counsel, a petitioner must show that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000).

### b. Grounds One and Two are Without Merit

Berrios' first and second grounds for relief are based on a statement that Officer Chapman allegedly made while in the hospital, after being shot and before passing away, to the effect that "[Shandel] Hernandez was the cause of his injuries." *Id.* at 2. Trial counsel for Angel Rodriguez, one of Berrios' codefendants, sought to have this statement admitted into evidence, arguing that the statement was admissible under Rule 804(b)(2) of the Federal Rules of Evidence, which provides for an exception to the rule against hearsay where, "[i]n a prosecution for homicide . . . a

[party offers a] statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances[.]" Fed. R. Evid. 804(b)(2). A hearing on the matter was held outside the presence of the jury, during which Rodriguez's counsel called a witness to testify as to Officer Chapman's physical condition and mental state while in the hospital. (Trial Tr., Vol. 15 at 50-62). Berrios' attorney also questioned the witness. *Id.* at 61-66. After hearing this testimony and oral argument, the trial court found that there was not enough evidence that Officer Chapman believed that his death was imminent at the time he made the statement. *Id.* at 67. Accordingly, the trial court concluded that Rule 804(b)(2) did not justify introduction of Officer Chapman's statement and excluded it. *Id.*

Insofar as Berrios argues that his trial counsel provided ineffective assistance in failing to attempt to locate additional witnesses to testify as to any statement Officer Chapman made while hospitalized, his argument is without merit. Because the trial court ruled that the statement was inadmissible hearsay because there was insufficient evidence that Officer Chapman had the mental state necessary to trigger an exception to the hearsay rule, it would have been futile for counsel to attempt to locate any additional witnesses to testify to the statement. Berrios' argument that his appellate counsel improperly neglected to argue actual innocence on appeal in light of the excluded statement similarly fails. Moreover, as detailed below, the evidence against Berrios and his codefendants—all of whom the jury found guilty on all eleven charged counts—was overwhelming.

In view of the foregoing, the Court finds that Berrios' trial and appellate counsel's actions neither amounted to deficient representation nor prejudiced his defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285. Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on Ground One and Ground Two.

## 2.   Ground Three: Counsel's Alleged Failure to Investigate Victim's Cause of Death

In his third ground for relief, Berrios argues that his trial counsel was ineffective in failing to investigate whether the death of the victim could have been due to medical negligence instead of gunshot wounds and "raising such claim at trial." (Dkt. No. 777 at 8). He also argues that his appellate counsel was ineffective in failing to raise this issue on appeal. *Id.* In making these challenges, Rodriguez "must overcome the presumption that, under the circumstances, [counsel's] challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 698.

### a.   Applicable Legal Principles: Counsel's Strategic Decisions

As the Supreme Court explained in *Strickland*, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective . . . strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based." 466 U.S. at 681. As such, "[w]hen counsel's assumptions are reasonable given the totality of the circumstances and when counsel's strategy represents a reasonable choice based upon those assumptions, counsel need not investigate lines of defense that he has chosen not to employ at trial." *Id.* (quoting *Washington v. Strickland*, 693 F.2d 1243, 1355 (5th Cir. 1982), *rev'd on other grounds*, 466 U.S. 668 (1984)). Moreover, to establish that the appellate representation that he received was ineffective, a petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," and that such issues were "clearly stronger" than those counsel chose to assert. *Smith*, 528 U.S. at 285. He must also show that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." *Mannino*, 212 F.3d at 845.

12

**b.   Ground Three is Without Merit**

As Magistrate Judge Cannon explained in his R&R, the defense strategy at trial was "to show that [Berrios] was not involved in the crime spree that took place on April 17, 2004," and "[counsel] pursued this defense by highlighting that the Government had no direct physical evidence against his client and by reiterating that there were no witnesses who identified his client." (Dkt. No. 903 at 7-8; *see also id.* at 8 n.5 (summarizing key testimony elicited by defendants' counsel on this point)). Berrios argues that, notwithstanding that this was evidently the defense strategy, his counsel acted improperly in failing to investigate whether casting doubt on the cause of death was a viable alternative or additional trial strategy. (Dkt. No. 777 at 7-8).

Here, Berrios has not overcome the "strong" presumption that his counsel's decision to center his defense on the question of whether Berrios and his codefendants were the actual culprits was "sound trial strategy." *Strickland*, 466 U.S. at 698. Under the circumstances, counsel's decision to not pursue inquiries into the victim's cause of death—a defense that would have taken attention away from Berrios' principal defense—was, at minimum, a defensible choice. *See Strickland*, 466 U.S. at 681 (noting that "the inconsistency of unpursued and pursued lines of defense" is a relevant consideration). Indeed, as Magistrate Judge Cannon observed while addressing similar claims raised by one of Berrios' codefendants, there is a reasonable probability "that highlighting the victim's cause of death would have detracted from the defense strategy, rather than bolstering it." (Dkt. No. 896 at 18). Further, the existing record and overwhelming weight of evidence against Berrios and his codefendants "does not support the supposition that the testimony of a medical expert would have changed the outcome." *Id.* This Court agrees.

Because Berrios has not overcome the strong presumption that his counsel acted reasonably in refraining from investigating the victim's cause of death, the Court finds that Berrios' trial and

13

appellate counsel's actions neither amounted to deficient representation nor prejudiced his defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285. Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### 3.  Ground Four: Counsel's Alleged Failure to Challenge Commerce Element on Certain Offenses

In his fourth ground for relief, Berrios argues that his trial counsel was ineffective in failing to argue that the Government had not satisfied its burden of proof with respect to the commerce element of Counts 1, 2, and 6, each of which charges, or is predicated upon, the crime of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a).  (Dkt. No. 777 at 10-12).

In the Third Circuit, "if the defendants' conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under [the Hobbs Act]." *United States v. Haywood*, 363 F.3d 200, 209-10 (3d Cir. 2004). Here, the trial court instructed the jury appropriately, informing the jury that, to satisfy the commerce element of the offense at issue, the Government had to prove that "the natural consequences of the acts alleged in the Indictment would be to delay, interrupt, or adversely affect 'interstate commerce.'" (Trial Tr., Vol. 16 at 13). The trial court additionally instructed the jury that it could find that the requisite impact upon commerce had been proven beyond a reasonable doubt if it found that "[the] Wendy's Restaurant [that Berrios and his codefendants were charged with robbing] was engaged in retail fast food sales in interstate or foreign commerce and in an industry that affects interstate or foreign commerce, that is, that Wendy's Restaurant was formed for the purpose of doing business within and outside of the Virgins Islands, and actually did business outside of the Virgin Islands." *Id.* at 31-32; *see also United States v. Fredericks*, 684 Fed. Appx. 149, 163 (3d Cir. 2017) ("We only require proof of a *de minimis* effect on interstate

commerce in order to support a conviction under the Hobbs Act. . . . Because [the business that was robbed] imported goods from outside the Virgin Islands, the interstate commerce requirement is satisfied." (internal quotation marks omitted)).

The evidence the Government presented at trial was more than sufficient to establish the commerce element of the three counts Berrios specifies. The jury heard testimony that 90% to 100% of Wendy's supplies were purchased and shipped from a warehouse in Florida, and that the only time the St. Croix Wendy's purchased "anything in the Virgin Islands is when [they] are desperate and [they're] out of something." (Trial Tr., Vol. 1 at 74-75). The jury also received photographic evidence of Wendy's supplies being imported from Canada. *Id.*

In view of the foregoing, the Court agrees with Magistrate Judge Cannon's conclusion that "[a]rguing that the defendants' conduct—attempting to rob Wendy's and shooting an off-duty police officer in the process—did not impact interstate commence would have been futile." (Dkt. No. 903 at 9). The Court therefore finds that Berrios' argument is without merit, and that Berrios' trial counsel's actions neither amounted to deficient representation nor prejudiced his defense. *Strickland*, 466 U.S. at 687. Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### 4.  Ground Five: Counsel's Alleged Failure to Move for Mistrial

In his fifth ground for relief, Berrios argues that his trial counsel was ineffective in failing to move for a mistrial. (Dkt. No. 777 at 12-13). Specifically, Berrios argues that his trial counsel should have moved for a mistrial after a number of police officers attended the trial while wearing clothing identifying themselves as police officers, as well as buttons depicting Officer Chapman, the murder victim. *Id.* He also argues that his appellate counsel was ineffective in failing to raise this issue on appeal. *Id.*

The trial transcript reflects that, the morning before trial resumed on January 17, 2007, counsel for Troy Moore, one of Berrios' codefendants, brought the issue of the police officers' buttons to the Court's attention. That interaction unfolded as follows:

> [Counsel for Codefendant Troy Moore]: Your Honor, just one matter before you bring in the jury. Your Honor, I notice that there are a number of police officers in the courtroom. But on the chest they're wearing a picture of Officer Chapman.
>
> [Counsel for Codefendant Angel Rodriguez]: They took it off already.
>
> [Counsel for Codefendant Troy Moore]: Oh, they did. Thanks. Judge, apparently the Government has fixed it.
>
> The Court: Apparently what?
>
> [Counsel for Codefendant Angel Rodriguez]: The Government has fixed it.
>
> The Court: All right.

(Trial Tr., Vol 7, at 13-14). Later that day, counsel for Angel Rodriguez—another of Berrios' codefendants—brought to the Court's attention the presence of additional police officers attending the trial who, although not wearing buttons depicting Officer Chapman, were wearing black shirts with the word police emblazoned in white across the chest. That interaction unfolded as follows:

> [Counsel for Codefendant Angel Rodriguez]: Your Honor, this case has now become a circus. Earlier today I made a complaint to the prosecution, that the police officers had come in and on their shoulders they had badges with pictures of the deceased on it. Now they're coming in - - I didn't mind that they have on white shirts, and something identifying themselves as police officers. It gets to be too much when we have them in black shirts and large white letters with "POLICE" across their chest. I believe that this is highly prejudicial, that it intimidates the jurors as to making findings based on something other than the evidence. I believe that these police officers have to be removed from this courtroom.
>
> [Government Counsel]: Judge, I don't see this is any different from them wearing a uniform in court. They are police officers. But the defense pointed out to us about something they were wearing. We agreed with the defense, took the buttons, and told them not to wear them in the courtroom. But right now, wearing police T-shirts and polo shirts, there are a couple. So I guess they're objecting to the T-shirts. I don't see it as any different wearing a police uniform.

16

[Counsel for Codefendant Angel Rodriguez]: Your Honor, if I may. The Government's evidence is - - the jury will consider the evidence based upon the Government's proof. The cavalry, however, the cheering section that they have become, have become loud to the point of ridiculous. Not loud in the sense that they are making noise or anything like that. It is loud in the sense of the size of the lettering that's on the police uniform. It's loud in the sense of the background against the black, and the white. It is loud in the sense of the statements that are being made by the presence and the amount of, numbers of officers that are in this very room. Your Honor, the jury, in my opinion, in my humble opinion, will be influenced unjustly by the manner in which the officers' presence, the officers are making themselves known as being here.

[Government Counsel]: There are six officers wearing T-shirts, three white polo shirts with a while emblem.

The Court: A total of 27 in the courtroom.

[Government Counsel]: Correct, Judge.

The Court: The objection is denied.

*Id.* at 63-64.

In sum, then, the record reflects that the police officers' buttons depicting Officer Chapman were removed and not worn in the presence of the jury. This issue was therefore "fixed," thus obviating the need for the Court to address it. The record also reflects that the trial court overruled an objection—leveled by one of Berrios' codefendants' counsel—seeking to remove police officers wearing identifying clothing in the courtroom. Given the trial court's earlier ruling, it would have been futile and counterproductive for Berrios' counsel to raise the same objection or move for a mistrial on the same grounds. Put simply, the trial court would not have entertained a motion for a more drastic remedy—a mistrial—based on these grounds, when it had already denied a lesser remedy—exclusion of the officers—on the same grounds.

The Court therefore finds that Berrios' argument is without merit, and that Berrios' trial and appellate counsel's actions neither amounted to deficient representation nor prejudiced his defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285. Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### 5.   Ground Six: Counsel's Alleged Failure to Call Expert Witness

In his sixth ground for relief, Berrios argues that his trial counsel was ineffective in failing to "call an expert in the field of human memory and perception" to cast doubt on the testimony of lay witnesses that the government called. (Dkt. No. 777 at 14). He also argues that his appellate counsel was ineffective in failing to raise this issue on appeal. *Id.*

Here, the weight of evidence against Berrios and his codefendants—all of whom the jury found guilty on all counts—was overwhelming and included *over forty witnesses*. As Magistrate Judge Cannon summarizes:

> The Government presented a circumstantial case that included the testimony of forty witnesses. Eyewitnesses testified to the physical characteristics of the defendants; expert witnesses testified about mobile phone records, fingerprints, textile fibers, and the victim's cause of death; cooperating witnesses testified to incriminating statements made by the defendants; friends and family members testified that contrary to their assertions the defendants knew each other; and the jury heard audio and watched videotape of Defendants Berrios and Moore discussing the robbery and the shooting of Officer Chapman.

(Dkt. No. 903 at 19).

In view of the weight of this evidence, the Court finds nothing to support Berrios' contention that, but for his trial counsel's decision not to call an expert in the field of "human memory and perception," there is a reasonable probability that the result of the trial would have been different. The Court therefore finds that Berrios has failed to demonstrate that his trial and appellate counsel's actions prejudiced him in any way. *See Strickland*, 466 U.S. at 694 (holding

18

that, to satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different"). Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### 6.  Ground Seven: Counsel's Alleged Failure to Move to Suppress Certain Evidence

In his seventh ground for relief, Berrios argues that his trial counsel was ineffective in failing to include an additional argument when counsel moved to suppress evidence obtained pursuant to a warrant authorizing the interception of certain wireless communications. (Dkt. No. 777 at 19). He also argues that his appellate counsel was ineffective in failing to raise this issue on appeal. *Id.*

Berrios' counsel moved to suppress the evidence at issue on the basis that the application affidavit did not establish probable cause. (Dkt. No. 378). Following a hearing, the motion to suppress was denied. (Dkt. Nos. 408, 427). Berrios argues that his counsel should have additionally moved to suppress the evidence on grounds that the District Court of Puerto Rico—which issued the warrant—did not have jurisdiction to do so. (*See* Dkt. No. 777 at 10 (arguing that "there was no jurisdictional premise for the District Court in Puerto Rico to issue a wire interception at the Detention Center where no crime was being committed")).

As Magistrate Judge Cannon correctly observes in his R&R, the District Court of Puerto Rico had jurisdiction to issue the warrant. (Dkt. No. 903 at 14). As he explains:

> The record shows that the District Court for Puerto Rico had jurisdiction to issue "an order authorizing or approving the interception of a wire, oral, or electronic communication." 28 U.S.C. § 2518(1). To wit: 1.) Defendants Berrios and Moore were detained in Puerto Rico; [and] 2.) the application for the warrant was supported by a sworn affidavit that stated that inmates Berrios and Moore were meeting with inmate Rivera and discussing

narcotics and other illegal activities in "the fourth floor recreation yard of
the special housing unit"[.]

*Id.* at 14-15.

Because the District Court for Puerto Rico had jurisdiction to issue the warrant in light of
the location of Berrios and these activities, the Court finds that Berrios' argument is without merit,
and that Berrios' trial and appellate counsel's actions neither amounted to deficient representation
nor prejudiced his defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285. Accordingly, the
Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### 7.   Grounds Eight and Nine: Counsel's Alleged Failure to Move to Strike Juror

In his eighth and ninth grounds for relief, Berrios argues that his trial counsel was
ineffective in failing to challenge the seating of a juror whom the murder victim's brother
recognized. (Dkt. No. 777 at 21-24).

### a.   Applicable Legal Principles: Right to Impartial Jury

The Sixth Amendment guarantees every criminal defendant "the right to a speedy and
public trial, by an impartial jury[.]" U.S. Const. amend. VI. The Due Process Clause of the Fifth
Amendment complements the Sixth Amendment's guarantee of trial by an impartial jury. *See
Morgan v. Illinois,* 504 U.S. 719, 727 (1992) ("[D]ue process alone has long demanded that, if a
jury is to be provided [to] the defendant, regardless of whether the Sixth Amendment requires it,
the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment.").
*Voir dire* examination "serves to protect the right to an impartial jury by providing the parties a
means of uncovering juror bias," because "[b]ias that emerges in response to *voir dire* questioning
can lead to excusal of a juror for cause or may facilitate the parties' intelligent exercise of
peremptory strikes." *United States v. Mitchell*, 690 F.3d 137, 141 (3d Cir. 2012).

20

Traditionally, courts have distinguished between "actual" and "implied" biases of jurors. *See id.* at 142 (collecting cases). Actual bias is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality," while implied bias is "bias conclusively presumed as a matter of law"—that is, "bias attributable in law to the prospective juror regardless of actual partiality." *Id.* (internal quotation marks and citations omitted). The doctrine of implied bias "is rooted in the recognition that certain narrowly-drawn classes of jurors are highly unlikely, on average, to be able to render impartial jury service despite their assurances to the contrary." *Id.*

### b.  Grounds Eight and Nine are Without Merit

The Court disagrees that the juror recognized by the victim's brother falls within the "narrowly-drawn classes of jurors [who] are highly unlikely, on average, to be able to render impartial jury service[.]" *Mitchell*, 690 F.3d at 142. Historically, such categories include jurors with "kinship to a party, even if remote; any financial interest in the case; former jury service in the same cause, or . . . connected to the same society or corporation as a party in the case." *United States v. Harper*, No. 11-CR-00004, 2014 WL 3708071, at *9 (D.V.I. July 25, 2014) (citations omitted), *aff'd sub nom. United States v. Flanders*, 635 F. App'x 74 (3d Cir. 2015). The Court is aware of no cases in which courts have found that work acquaintances—even assuming that was the case here—constitute implied bias. *Cf. Smith v. Phillips*, 455 U.S. 209, 212-13 (1982) (holding juror was not impliedly biased where juror submitted job application to prosecutor's office during pendency of trial).

The trial transcript reflects no more than that the murder victim's brother "recognized one of the jurors, and says that he [the brother] . . . deals with vending machines, wherever [the juror] works, and [the brother] thinks that [the juror] may have recognized him." (Trial Tr., Vol. 1 at 31).

21

Because there is no indication here, and no authority to support the proposition, that this remote connection between the juror and the murder victim's brother creates implied bias, the Court concludes that Berrios' trial and appellate counsel's failure or refusal to raise this issue neither amounted to deficient representation nor prejudiced Berrios' defense. *Strickland*, 466 U.S. at 687; *Smith*, 528 U.S. at 285. Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on Grounds Eight and Nine.

### 8. Ground Ten: Counsel's Alleged Failure to Move to Preclude Certain Witness Testimony

In his tenth ground for relief, Berrios argues that his trial counsel was ineffective in failing to move that a certain government witness—Deputy David Drake—be precluded from testifying because Deputy Drake did not comply with the Court's sequestration order. (Dkt. No. 777 at 27; *see also* Fed. R. Crim P. 615 (providing that, "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony," with certain exceptions)).

As the Government notes in its Response to Berrios' Motion to Vacate, Deputy Drake was not sequestered prior to his testimony. (Dkt. No. 823 at 42). In fact, Deputy Drake "was in the courtroom constantly as he discharged his duties [as a United States Marshal] to help provide security there." *Id.* The Government explains that Deputy Drake was not initially on the Government's witness list, and that the Government called him only when, at trial, "an issue [unexpectedly] arose about Berrios' complexion," at which time the Government called him "to testify that [] Berrios' complexion was darker on May 10, 2004 (the date of Berrios' arrest) than it was during the trial." *Id.* Deputy Drake's testimony was limited to the singular issue of establishing Berrios' complexion at the time of his arrest. (Trial Tr., Vol. 14 at 52-56).

Under the circumstances, Berrios cannot show that his counsel's decision not to challenge Deputy Drake's testimony prejudiced his defense. As previously noted, the weight of evidence against Berrios and his codefendants was overwhelming. Further, Deputy Drake's testimony was very limited in scope, and Berrios' trial counsel opted to call Deputy Drake's testimony into question during closing arguments. (*See* Trial Tr., Vol. 16 at 75 ("[Berrios] is a light-skinned Puerto Rican. How important is that evidence? I'll tell you how important it is. It's so important that the Government did one of the silliest things I've ever seen in 28 years of practicing law. It put [Deputy Drake] on that stand and [he] tried to testify that Mr. Berrios used to be a dark-skinned Puerto Rican.")). Counsel's choice to not challenge the admission of Deputy Drake's testimony, and to later highlight what he called the "silliness" of the Government's effort to establish that Berrios' complexion was different at the time of his arrest than at the trial, was a strategic decision and a reasonable one. *See Strickland*, 466 U.S. at 681 ("[S]trategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based.").

In view of the foregoing, the Court finds nothing to support Berrios' contention that, but for counsel's failure to move the trial court to preclude Deputy Drake from testifying, there is a reasonable probability that the result of the trial would have been different. The Court therefore finds that Berrios has failed to demonstrate that his trial counsel's actions prejudiced him in any way. *See Strickland*, 466 U.S. at 694. Nor has Berrios overcome the strong presumption that his counsel's decision to challenge the Government's decision to call Deputy Drake rather than to move to exclude Deputy Drake's testimony was "sound trial strategy." *Id*. at 698. Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### 9.  Ground Eleven: Counsel's Alleged Failure to Obtain Certain Discovery

In his eleventh ground for relief, Berrios argues that his trial counsel was ineffective in failing to request discovery into any internal affairs reports regarding two government agents who testified at trial—Deputy Drake and Detective Richard Matthews— "in order to adequately cross-examine them[.]" (Dkt. No. 777 at 28). He also argues that his appellate counsel was ineffective in failing to raise this issue on appeal. *Id.*

Berrios cannot demonstrate that he suffered prejudice as a result of his counsel's decision not to seek further discovery into Deputy Drake and Detective Matthews. With respect to Deputy Drake, the trial transcript reflects that Deputy Drake's testimony was limited to the singular issue of establishing the complexion of Berrios' skin, as noted above. (Trial Tr., Vol. 14 at 52-56). Further, there is nothing to suggest that Deputy Drake's internal affairs file contained anything that would have assisted trial counsel in impeaching even this relatively limited testimony. With respect to Detective Matthews, whose testimony was more substantive, Berrios specifically highlights that another witness at trial—Chenelle Simmonds—testified that Detective Matthews offered her a bribe to testify falsely in the case, arguing that Detective Matthews' internal affairs file would likely have corroborated Ms. Simmonds testimony. *Id.* at 29-30. However, Berrios' reliance on Ms. Simmonds' testimony to establish that Detective Matthews' internal affairs file may have revealed information that would have assisted trial counsel in impeaching him is unavailing. Ms. Simmonds was indicted for perjury and making multiple false declarations based on her testimony in Berrios' case, and—after pleading guilty—was sentenced to 35 months' imprisonment. *See United States v. Simmonds*, 10-CR-00016 (D.V.I. 2016). As with Deputy Drake, then, there is nothing to suggest that Detective Matthews' internal affairs file contained anything that would have assisted trial counsel in impeaching Detective Matthews' testimony.

In addition, the weight of evidence against Berrios and his codefendants was overwhelming, as summarized above. Against this weight of evidence, there is nothing to support Berrios' contention that, but for counsel's failure to obtain Deputy Drake's and Detective Matthews' internal affairs files, there is a reasonable probability that the result of the trial would have been different. The Court therefore finds that Berrios has failed to demonstrate that his trial and appellate counsel's actions prejudiced him in any way. *See Strickland*, 466 U.S. at 694 (holding that, to satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different").

In view of the foregoing, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### 10. Ground Twelve: Counsel's Alleged Failure to Request Jury Instruction Regarding Informant Witnesses

In his twelfth ground for relief, Berrios argues that his trial counsel was ineffective in failing to move the trial court to provide the jury with an instruction regarding government informants, instead of, or in addition to, an instruction regarding cooperating witnesses. (Dkt. No. 777 at 33-34). In support of this argument, Berrios relies on the Fourth Circuit's decision in *United States v. Luck*. *Id.* at 23 (citing 611 F.3d 183 (4th Cir. 2010)).

In *Luck*, the Fourth Circuit found that, given the key role an informant's testimony played in the trial, counsel acted ineffectively in failing to request an instruction to the effect that: "The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the

informer's testimony has been affected by interest or by prejudice against a defendant." *Luck*, 611

F.3d at 186-87. The Fourth Circuit reasoned that "a general witness credibility instruction is not

sufficiently cautionary for informants because of special concerns about the incentive that they

have to fabricate information for their own benefit." *Id.* at 187.

Here, the trial court did not specifically instruct the jury regarding their consideration of

the testimony of informants. However, the trial court gave the jury the following cooperating

witness instruction:

> The testimony of a cooperating witness, someone who provides evidence
> against someone else to escape punishment for his or her own misdeeds or
> crimes or for other personal reason or advantage, must be examined and
> weighed by the jury with greater care than the testimony of a witness who
> is not so motivated.
>
> The jury must determine whether the testimony of a cooperating witness
> [ ] has been affected by self-interest, or by an agreement that he or she has
> with the Government, or his or her own interest in the outcome of the case,
> or by prejudice against any Defendant.

(Trial Tr., Vol. 16 at 19-20).

As Magistrate Judge Cannon aptly noted in his R&R, the instruction the Court gave, while

not identical to the "informant" instruction contemplated in *Luck*, also warns the jury that they

should exercise "greater care" with respect to a cooperating witness' testimony than with respect

to that of an ordinary witness. (*See* Dkt. No. 903 at 20-21 (noting that, "[w]hether the term

cooperating witness or informant was used, the jury would have been instructed to exercise *great

care* in weighing that witness's testimony as compared to the testimony of a witness who is not

motivated by self-interest or obligation to the government") (emphasis in original)). Further, the

language of the instruction that the trial court gave—which instructs the jury to scrutinize in

particular the testimony of a witness who offers testimony "to escape punishment for his or her

own misdeeds or crimes *or for other personal reason or advantage*"—reflects the same sentiments as the *Luck* instruction that Berrios argues the Court should have used here. *See Luck*, 611 F.3d at 186 (instructing the jury to scrutinize in particular the testimony of a witness who offers testimony "against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication").

In sum, then, the trial court's "cooperating witness" instruction instructed the jury to exercise the same degree of scrutiny—"greater care"—as the "informant" instruction that Berrios argues should have been adopted here, and the two instructions also contain similar language, with both instructions capturing paid witnesses within their gamut. (*See* Trial Tr., Vol. 16 at 19 (specifying witnesses who act "for other personal reason or advantage")). Additionally, as Magistrate Judge Cannon observed, the fact that the witness at issue received payment from the Government "was raised repeatedly throughout the trial," and "[t]he jury was well aware that the witness received money from the Government." (Dkt. No. 903 at 21).

Under the circumstances, the Court finds that Berrios' argument is without merit, and that Berrios' trial counsel's actions neither amounted to deficient representation nor prejudiced his defense. *Strickland*, 466 U.S. at 687. Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### 11. Ground Thirteen: Counsel's Alleged Failure to Request Jury Instruction Regarding Certain Element

In his thirteenth ground for relief, Berrios argues that his trial counsel was ineffective in "failing to move the court to charge the jury with the correct elements of 18 U.S.C. § 924(c)(1)(A)" with respect to Counts 4, 9, and 11. (Dkt. No. 777 at 33). Specifically, Berrios argues that his counsel was ineffective insofar as counsel did not request an instruction to the jury that it must

find that Berrios "brandished" a firearm to find him guilty under Section 924(c)(1)(A). *Id.; see* 18 U.S.C. § 924(c)(1)(A)(ii) (setting forth mandatory minimum sentence of imprisonment for certain crimes in which the defendant brandished a firearm). In support of this argument, Berrios relies on the Supreme Court's 2013 decision in *Alleyne v. United States*, in which the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an "element" of that crime, not a "sentencing factor," and as such must be submitted to jury. *Id.* at 35 (citing 570 U.S. 99, 102 (2013)).

Berrios was sentenced on June 11, 2007. (Dkt. No. 529). Because Berrios was sentenced before the Supreme Court decided *Alleyne*, the *Alleyne* decision must apply retroactively on collateral review for Berrios' challenge to succeed. *Alleyne* does not clear this bar. *See United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014) (holding that "*Alleyne* announced a procedural, rather than substantive rule" and that the "Supreme Court has not chosen to apply Alleyne's new rule retroactively to cases on collateral review"). Accordingly, the Court finds that Berrios' argument is without merit, and that Berrios' trial counsel's actions neither amounted to deficient representation nor prejudiced his defense. *Strickland*, 466 U.S. at 687. Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### 12. Ground Fourteen: Counsel's Alleged Failure to Request Leave for Berrios to Address Sentencing Court

In his fourteenth ground for relief, Berrios argues that his trial counsel was ineffective because counsel did not explicitly ask the sentencing court to allow Berrios to address the court, notwithstanding that Berrios "did want to speak on his own behalf as [is his] right to do so." (Dkt. No. 777 at 35). He also argues that the sentencing court committed procedural error in failing to ask whether he wished to address the court. *Id.*

Rule 32 of the Federal Rules of Criminal Procedure provides that, "[b]efore imposing sentence, the court must address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(I)(4)(A)(ii); s*ee United States v. Dukes*, 387 F. App'x 196, 201 (3d Cir. 2010) ("[Rule 32(I)(4)(A)(ii)] requires the district court to give the defendant an opportunity to address the court before sentencing."). Here, the sentencing court explicitly asked Berrios' attorney "Does your client wish to make a statement?" (Sentencing Tr. at 5). Berrios' attorney answered, "No, Your Honor." *Id.* Further, the sentencing court asked Berrios if he had any questions, and the transcript reflects that Berrios "[shook] his head left to right." *Id.* at 18.

In view of the foregoing, the Court finds that there is no merit to Berrios' contention that the sentencing court committed any error. Nor does Berrios allege any facts that provide any reason to conclude that his counsel acted improperly. Indeed, while Berrios represents that he "want[ed]" to speak on his own behalf, he does not allege that he expressed as much to his counsel. Moreover, the sentencing transcript does not reflect that Berrios expressed any disagreement when his counsel responded to the Court's inquiry by stating that Berrios did not wish to address the Court, nor does it reflect any request by Berrios to speak to the court when the court asked if he had any questions. The Court therefore finds that Berrios' arguments are without merit, and that Berrios' trial counsel's actions neither amounted to deficient representation nor prejudiced his defense. *Strickland*, 466 U.S. at 687. Accordingly, the Court will deny Berrios' Motion to Vacate insofar as it seeks relief on this ground.

### C.   Berrios' Supplemental Challenges

In his Motions to Supplement, Berrios challenges his convictions in light of rights the Supreme Court recognized after Berrios filed his Motion to Vacate on January 21, 2014. (Dkt. No.

776). Specifically, Berrios challenges his convictions in light of: *Johnson v. United States*, 576 U.S. 591 (Dkt. No. 846) (Ground 15); *Borden v. United States*, 141 S. Ct. 1817 (Dkt. Nos. 961, 964) (Ground 16); *United States v. Taylor*, 142 S. Ct. 2015 (Dkt. Nos. 961, 962, 964) (Ground 17); and *Lora v. United States*, 143 S. Ct. 1713 (Dkt. No. 988) (Ground 18).

Motions to vacate filed under Section 2255 are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). As relevant here, where a petitioner challenges his conviction(s) based on rights subsequently recognized by the Supreme Court, Section 2255(f)(3) provides that the petitioner has one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" *Id.* § 2255(f)(3).[6]

As an initial matter, *Borden* and *Taylor* are decisions of substantive statutory interpretation, which apply retroactively on collateral review for purposes of Section 2255(f)(3). *Teague v. Lane*, 489 U.S. 288, 310 (1989). Likewise, *Johnson* sets forth a new substantive rule of constitutional law, which applies retroactively on collateral review for purposes of Section 2255(f)(3), *id.,* and the Supreme Court has also made *Johnson* retroactive on collateral review for purposes of Section 2255(h)(2), *Welch v. United States*, 578 U.S. 120, 135 (2016). The question therefore becomes

---

[6] As Berrios raises these challenges in supplements to his first Section 2255 petition, the question is whether these decisions retroactively apply for purposes of Section 2255(f)(3), not whether the Supreme Court has "made" them retroactive for purposes of authorizing a second or successive petition under Section 2255(h)(2). *See generally In re Jackson*, 776 F.3d 292 (5th Cir. 2015) (explaining that decisions announcing a new substantive rule of either constitutional law or statutory interpretation apply retroactively for purposes of authorizing an initial petition under Section 2255(f)(3) regardless of whether the Supreme Court has "made" those rules retroactive, while only decisions announcing a new rule of constitutional law may apply retroactively for purposes of authorizing a second or successive petition under Section 2255(h)(2), and only if "made" retroactive by the Supreme Court).

whether Berrios' challenges were raised within Section 2255(f)(3)'s one-year statute of limitations.

Berrios' *Borden* challenge was raised outside of the one-year statute of limitations: *Borden* was decided on June 10, 2021, 141 S. Ct. 1817, and Berrios filed his Second Motion to Supplement, in which he raised his *Borden* challenge for the first time, on October 3, 2022 (Dkt. No. 961). However, Berrios' *Johnson*, *Taylor*, and *Lora* challenges were each raised within the one-year statute of limitations. *Johnson* was decided on June 26, 2015, 576 U.S. 591, and Berrios filed his First Motion to Supplement, in which he raised his *Johnson* challenge for the first time, on March 18, 2016 (Dkt. No. 846). *Taylor* was decided on June 21, 2022, 142 S. Ct. 2015, and Berrios filed his Second Motion to Supplement, in which he raised his *Taylor* challenge for the first time, on October 3, 2022 (Dkt. No. 961). *Lora* was decided on June 12, 2023, 143 S. Ct. 1713, and Berrios filed his Eighth Motion to Supplement, in which he raised his *Lora* challenge for the first time, on July 10, 2023. (Dkt. No. 988). Berrios' *Johnson*, *Taylor*, and *Lora* challenges are therefore timely.[7]

In *Taylor*, the Supreme Court addressed the circumstances under which a defendant may be subject to enhanced criminal penalties under Section 924(c)(1) of Title 18 of the United States Code, which sets forth mandatory minimum sentences for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm[.]" 18 U.S.C. § 924(c)(1)(A). By virtue of interpreting Section 924(c), the

---

[7] Because the Court concludes that Berrios' *Taylor* challenge warrants vacatur of Counts 6 and 9, the Court does not address whether Berrios' *Borden* challenge—which targets the same convictions and which was raised outside the one-year statute of limitations —"relates back" to the date he filed his initial petition, nor does it consider whether Berrios' *Johnson* and *Lora* challenges—which also target the same convictions—warrant relief.

*Taylor* decision also bears on the circumstances under which a defendant may be subject to enhanced criminal penalties under Section 924(j), which sets forth additional mandatory minimum sentences for "[a] person who, in the course of a violation of [Section 924(c)], causes the death of a person through the use of a firearm[.]" *Id.* § 924(j).

Central to *Taylor* is the question of how the term "crime of violence"—as used in Section 924(c) and thereby incorporated into Section 924(j)—is defined. Section 924(c)(3) defines a "crime of violence" as "an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3). Section 924(c)(3)(A) is called the "elements clause," while Section 924(c)(3)(B) is called the "residual clause." In a decision pre-dating *Taylor*, the Supreme Court held that the residual clause of Section 924(c)(3) was unconstitutionally vague. *Davis v. United States*, 139 S. Ct. 2319, 2336 (2019). By consequence, only crimes that satisfy Section 924(c)(3)'s elements clause may qualify as "crime[s] of violence" for purposes of subjecting a defendant to enhanced penalties under Section 924(c)(1)(A) or Section 924(j). *Id.* It is this clause that the Supreme Court addressed in *Taylor*, holding that attempted Hobbs Act robbery does not qualify as a "crime of violence" under Section 924(c)(3)'s elements clause because no element of the offense categorically requires proof that the defendant used, attempted to use, or threatened to use force. 142 S. Ct. at 2020.

Berrios argues that *Taylor* warrants vacatur of five of his convictions. (Dkt. Nos. 961, 962, 964). First, **Count 4**—using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)—is predicated upon Count 3, carjacking in violation of 18 U.S.C. § 2119(1). (Dkt. No. 309 at 3, 5). Berrios was sentenced to seven years' imprisonment on this count.

32

(Dkt. No. 573 at 3). Second, **Count 5**, felony murder in the first degree, in violation of 14 V.I.C. § 922(a)(2) is not predicated on any other count. (Dkt. No. 309 at 6). Berrios was sentenced to life imprisonment on this count. (Dkt. No. 572 at 3). Third, **Count 6**—causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1)—is predicated upon Count 2, attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). (Dkt. No. 309 at 3, 7). Berrios was sentenced to life imprisonment on this count. (Dkt. No. 573 at 3). Fourth, **Count 8**, attempted carjacking, in violation of 18 U.S.C. §2119(1), is not predicated on any other count. (Dkt. No. 309 at 9). Berrios was sentenced to fifteen years' imprisonment on this count. (Dkt. No. 573 at 3). Fifth, **Count 9**—using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)—is predicated upon Count 8, attempted carjacking in violation of 18 U.S.C. § 2119(1). (Dkt. No. 309 at 9. 10). Berrios was sentenced to 25 years' imprisonment on this count. (Dkt. No. 573 at 3).

Berrios is incorrect that Counts 4, 5, or 8 are implicated by *Taylor*. Count 4 is the substantive crime of carjacking, and Count 5 arises under territorial law; *Taylor* has no bearing on these situations. Likewise, Count 8 is predicated on a *completed* carjacking offense—an offense untouched by *Taylor*. *Cf. United States v. Stoney*, 62 F.4th 108, 114 (3d Cir. 2023) (concluding that completed Hobbs Act robbery remains a valid Section 924(c) predicate after *Taylor*); *Taylor*, 142 S. Ct. at 2020 ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause." (emphasis in original)).

Berrios' convictions under Counts 6 and 9 are a different matter, as the Government recognizes here. (*See* Dkt. No. 882 at 14-15 (recognizing that, should the Court find that a *Taylor* challenge raised by one of Berrios' codefendants is timely, Counts 6 and 9 "need to be vacated")). On its face, *Taylor* precludes predicating a Section 924(c) conviction on attempted Hobbs Act

robbery, and Berrios' Section 924(c) conviction on Count 6 is so predicated. The Court will therefore vacate Berrios' conviction on Count 6 on this basis. Likewise, Berrios' Section 924(j) conviction on Count 9 also falls to *Taylor* because—as the Government states in its response to one of Berrios' codefendants—"attempted carjacking . . . may consist only of attempt to present a threat, and therefore does not categorically qualify as a 'crime of violence' under the elements clause." (Dkt. No. 882 at 15). The Court will therefore vacate Berrios' Count 9 conviction based on the Government's concession.[8]

In view of the foregoing, the Court concludes that vacatur of Berrios' convictions on Counts 6 and 9 is warranted in light of *Taylor*. The Court addresses the consequences of this finding in the following section.

---

[8] While the Government has not responded to the challenges Berrios raises in his Motions to Supplement, including Berrios' *Taylor* challenge, the Government did respond to an identical *Taylor* challenge raised by one of Berrios' co-defendants, Felix Cruz ("Cruz"). (Dkt. No. 982). There, the Government recognized that, if the Court found that Cruz's *Taylor* challenge was timely, Counts 6 and 9 "need to be vacated." *Id.* at 14-15. The Court notes that the Third Circuit has not yet addressed the question whether *Taylor* warrants vacatur of a conviction predicated on attempted carjacking. However, a panel of the Third Circuit appears to have recognized the likelihood that *Taylor* impacts such convictions in a recent unpublished opinion, in which it expressed "confiden[ce]" that the Government would "quickly" address the potential impact of *Taylor* on a defendant's Section 924(c) convictions that were predicated on attempted carjacking. *United States v. Lewis*, No. 22-2190, 2022 WL 4546859, at *1 n.1 (3d Cir. Sept. 29, 2022). The government has often taken the position, as it does here, that *Taylor* applies with equal force to attempted carjacking. *See, e.g., United States v. Daniels*, No. 11-CR-00008, 2023 WL 2588172, at *2 (M.D. Ala. Mar. 21, 2023) (noting that "the parties contend that *Taylor*'s analysis of attempt law applies equally to attempted carjacking because a conviction for attempted carjacking does not categorically require the government to prove the use, attempted use, or threatened use of force," and granting motion to vacate conviction on that basis) (internal citation omitted); *Williams v. United States*, No. 19-CV-02668, 2022 WL 17752128, at *2 (E.D. Mo. Dec. 19, 2022) (noting that "[t]he parties agree . . . that the Supreme Court's reasoning set forth in *Taylor* applies equally to attempted carjacking" and granting motion to vacate conviction on that basis); *cf. United States v. Obanion*, No. 98-CV-00442, 2022 WL 18027791, at *1 (D. Md. Dec. 30, 2022) (holding that conspiracy to commit carjacking and attempted carjacking "no longer qualify as crimes of violence in light of the opinion of the United States Supreme Court in [Davis] and the recent opinion of the Supreme Court in [*Taylor*]").

### D. Effect of Vacatur

Having determined that Counts 6 and 9 are "vulnerable to collateral attack," the Court must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 18 U.S.C. 2255(b). The Third Circuit has adopted the "sentencing-package doctrine." *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997). The sentencing-package doctrine recognizes "a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan." *Id.* at 122 (quotation omitted); *see also Dean v. United States*, 581 U.S. 62, (2017) (explaining that sentencing-package cases "typically involve . . . a successful attack by a defendant on some but not all of the counts of conviction*"* (quoting *Greenlaw v. United States*, 554 U.S. 237, 253 (2008)). Accordingly, "[w]hen a conviction on one or more [] component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture[.]" *Davis*, 112 F.3d at 122 (quotation omitted). "The district judge's goal in revisiting the overall sentencing plan after vacatur of a conviction is to ensure that the punishment still fits both crime and criminal." *United States v. Grant*, 9 F.4th 186, 199 (3d Cir. 2021) (quotation omitted).

The Third Circuit has stressed that "the sentencing package doctrine should be confined to cases in which the sentences on the underlying counts [are] *interdependent." United States v. Miller*, 594 F.3d 172, 180 (3d Cir. 2010) (citing *McKeever v. Warden SCI-Graterford,* 486 F.3d 81, 87-88 (3d Cir. 2007), and *United States v. Murray,* 144 F.3d 270, 273 n.4 (3d Cir.1998)) (emphasis in original). Where the sentences on the underlying counts are interdependent, *de novo* resentencing is necessary. *Id.* at 181-82 ("[W]e reaffirm the sentencing package doctrine endorsed in *Davis.* When a conviction on one or more interdependent counts is vacated on appeal, the

resentencing proceeding conducted on remand is *de novo* unless we specifically limit the district court's authority. Moreover, counts that were grouped pursuant to the Sentencing Guidelines at the original sentencing are interdependent, such that the vacation of one of the grouped counts requires a *de novo* sentencing on remand unless we direct otherwise."); *United States v. Ciavarella*, 716 F.3d 705, 734 (3d Cir. 2013) (same). This is because interdependent offenses "result in an aggregate sentence, not sentences which may be treated discretely." *Id.* at 180 (quotation omitted).

Offenses are interdependent when they are "grouped" pursuant to Section 3D1.2 of the Sentencing Guidelines, "Groups of Closely Related Counts." *Id.* at 180-81. Section 3D1.2 provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> (a) When counts involve the same victim and the same act or transaction.
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

USSG. § 3D1.2.[9]

Berrios was convicted of eleven counts. (Dkt. No. 486). Nine are federal counts and two are territorial counts. The sentences Judge Finch imposed on the nine federal counts are as follows:

➢ **Count 1: 20 years**, for conspiracy to interfere with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a);

---

[9] Berrios was sentenced on July 11, 2007 (Dkt. No. 529). The sentencing manual in effect at that time contained virtually identical language.

> ➤ **Count 2: 20 years**, for attempted interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a);

> ➤ **Count 3: 15 years**, for carjacking, in violation of 18 U.S.C. §2119(1);

> ➤ **Count 4: 7 years**, for using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A);

> ➤ **Count 6: Life**, for causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1);

> ➤ **Count 8: 15 years**, for attempted carjacking, in violation of 18 U.S.C. §2119(1);

> ➤ **Count 9: 25 years**, for using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A);

> ➤ **Count 10: 15 years**, for carjacking, in violation of 18 U.S.C. §2119(1); and

> ➤ **Count 11: 25 years**, for using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

(Dkt. No. 573 (Judgment and Commitment Order on Federal Counts)). The sentences Judge Finch imposed on the two territorial counts are as follows:

> ➤ **Count 5: Life**, for felony murder in the first degree, in violation of 14 V.I.C. § 922(a)(2); and

> ➤ **Count 7: 15 years and a fine of $50,000**, for unauthorized use of a firearm during a crime of violence, in violation of 14 V.I.C. § 922(a)(2).

(Dkt. No. 572 (Judgment and Commitment Order on Territorial Counts)). Judge Finch specified that the territorial counts are to run consecutive to the federal counts and consecutive to one another, and that they are to be served after the term of imprisonment on the federal counts. (Dkt. No. 572 at 1; Dkt. No. 573 at 3). Judge Finch also specified that federal Counts 1, 2, 3, 6, and 8 are to run consecutively to one another. (Dkt. No. 573 at 3).

There is no question that the counts the Court vacates here—Counts 6 and 9—are interdependent with the nine other counts. At minimum, the counts "involve the same victim and

the same act or transaction" under Section 3D1.2(a)—namely, the carjacking, robbery, and murder of a police officer. USSG § 3D1.2(a). Accordingly, the sentencing-package doctrine requires that Berrios be resentenced *de novo* on the nine remaining counts: Counts 1, 2, 3, 4, 5, 7, 8, 10, and 11.

## IV.   CONCLUSION

In view of the foregoing, the Court will vacate Counts 6 and 9 and will schedule, by separate Order, a resentencing hearing to address the nine remaining counts. The Court will otherwise deny Berrios' Motion to Vacate, and will adopt Magistrate Judge Cannon's R&R as modified herein.

An appropriate Order accompanies this Memorandum Opinion.

Date:   July 25, 2023

                                   _____/s/_____
                                   WILMA A. LEWIS
                                   District Judge